GROVER C. RICHMAN, Jr., ATTORNEY-GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT, v. KATHERINE K. NEUBERGER, HALSEY W. STICKEL, HARRISON L. TODD AND EVELYN M. SEUFERT, DEFENDANTS-RESPONDENTS.

Argued May 7, 1956—Decided June 13, 1956.

*Mr. Harold Kolovsky,* Assistant Attorney-General, argued the cause for the plaintiff-appellant (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey).

*Mr. James A. Major* argued the cause for the defendant-respondent Evelyn M. Seufert.

*Mr. Walter H. Jones* argued the cause as *amicus curiae* for the Senate and General Assembly of the State of New Jersey.

The opinion of the court was delivered by

VANDERBILT, C. J. This action in lieu of a prerogative writ was brought by the Attorney-General of New Jersey to test the validity of the extension by the Legislature of the term in office of the defendants as members of the Law Enforcement Council, who had been appointed by the Governor with the advice and consent of the Senate, and seeking their ouster from office. From an adverse determination on his motion for summary judgment in the Law Division of the Superior Court, the Attorney-General appealed. We certi-

fied the matter on our own motion while it was pending in the Appellate Division.

On May 21, 1952, by *chapter* 253, *L.* 1952; *N. J. S. A.* 52:17B–43.1 *et seq.* there was established in the Department of Law and Public Safety within the executive branch of our State Government a body known as the Law Enforcement Council, consisting of five members, each to be appointed by the Governor with the advice and consent of the Senate and to "serve at the pleasure of the Governor." This act provided that the Law Enforcement Council should become inoperative on and after July 1, 1953, unless its operation was extended beyond that date by legislative act.

On June 9, 1953, by *chapter* 182 of *Laws of* 1953, the operation of the law was extended for a period of two years until July 1, 1955. The 1953 amendment eliminated the indefinite term of office of the Council members, originally established "at the pleasure of the Governor," and provided that they should now be appointed for a term beginning July 1, 1953 (except in certain instances not pertinent to the matter before us) and ending on July 1, 1955. This amendment also separated the Law Enforcement Council from the Department of Law and Public Safety and made provision for an independent appropriation for it in the performance of its delegated work. Subsequent to the 1953 amendment the defendants were appointed members of the Law Enforcement Council with the advice and consent of the Senate for terms ending on July 1, 1955.

On June 14, 1955, by *chapter* 68 of *Laws of* 1955, the original act was further amended extending its operation until July 1, 1956. This amendatory act, in addition, amended section 2 of the original act so as to read and provide that:

"The council shall consist of 5 members. Each member of the council shall be appointed by the Governor, with the advice and consent of the Senate, for a term ending on July 1, 1955. In case of a vacancy in the present membership of the council the term of the person appointed to fill such vacancy shall commence upon his appointment and confirmation and shall continue until July 1,

1956. Vacancies shall be filled in the same manner as the original appointments were made. *The terms of the members of the council now in office are hereby extended until July* 1, 1956." (Italics supplied.)

The Attorney-General maintained that the italicized portion of section 2 as amended was unconstitutional and invalid because it constituted an attempted appointment by the Legislature of members of the Law Enforcement Council, who the Attorney-General claimed were executive or administrative officers, in violation of the provisions of the *Constitution of* 1947, *Article* IV, *Section* V, *paragraph 5*, which provides that:

"Neither the Legislature nor either house thereof shall elect or appoint any executive, administrative or judicial officer except the State Auditor."

Accordingly he filed his complaint in this action seeking to test the title of the defendants to their offices and seeking their ouster. After the answers of the defendants were filed, leave was granted to the Senate and the General Assembly of New Jersey to file briefs and present oral argument in this matter through Senator Walter H. Jones as *amicus curiae.*

, The deposition of the defendant Katherine K. Neuberger was then taken by the plaintiff for the purpose of showing the activities of the Council during its term of existence. Thereafter the plaintiff moved for a summary judgment. The matter was heard before the late Judge Ralph J. Smalley, who ruled that although the extension by the Legislature of the term of an executive or administrative officer was unconstitutional in view of the provisions of *Article* IV, *Section* V, *paragraph* 5 of the *Constitution of* 1947, the Law Enforcement Council was not an executive or an administrative agency but primarily a legislative body, and that therefore the Legislature had the power to extend the terms of the Council members.

The basic functions, the powers and the duties of the Law Enforcement Council are set forth in section 5 of the Act,

*N. J. S. A.* 52:17*B*–43.5, which has never been amended. Here we find that the Council was required to

"a. Develop plans and programs insofar as possible to eliminate the basic causes of crime and delinquency;

b. Review and evaluate the laws of the State relating to crimes and criminal procedure and recommend such amendments thereof or supplements thereto as will, in its judgment, make such laws more effective deterrents to crime;

c. Examine into and appraise, on a continuing basis, the administration, enforcement and operation of all State and local laws, ordinances and regulations relating to crimes and offenses;

d. Examine into and audit, on a continuing basis, the performance of all law enforcement agencies, activities and facilities, at all levels of government throughout the State;

e. Initiate and conduct such investigations of law enforcement agencies, facilities and programs in the State as may in its judgment be required in order that it may adequately advise the Governor, the Attorney-General, the Legislature and the public generally on the condition of law enforcement within the State;

f. Initiate and from time to time conduct State-wide law enforcement conferences for the purpose of accomplishing greater coordination and uniformity of law enforcement procedures and of recommending improvements thereof.

g. Hold such hearing within the State with respect to any or all phases of its work as it may deem necessary or desirable;

h. Consult and advise with the Attorney-General, and from time to time submit to him such recommendations as it may deem advisable, with respect to the conduct of its work and the administration and operation of law enforcement within the State; and

i. Report to the Governor, the Attorney-General and the Legislature annually, and at such other times as it may deem in the public interest, with respect to its findings and conclusions."

It is all but conceded by the Attorney-General that if the Law Enforcement Council is a legislative body, then it is within the authority of the Legislature to deal with the extension of the term of its members in spite of the fact that it originally gave the power of appointment to the Governor. If the defendants are legislative officers, then all the arguments directed toward convincing us of the constitutional impropriety of the Legislature's action with respect to executive or administrative officers must be disregarded as being irrelevant. That is the issue squarely presented and dealt with in *Richman v. Ligham,* 22 *N. J.* 40 (1956).

The Attorney-General, in contending that the defendant members of the Council are within the executive orbit, points to the fact that the suggestion for the formation of such body was made by Governor Driscoll in his annual message to the Legislature, *Fifth Annual Message to the Legislature, p.* 16 (1952), and that the establishment of the Council pursuant to such recommendation in the Department of Law and Public Safety was a "clear manifestation of the legislative intent that the Council should be an executive or administrative agency." In disposing of this argument below, the trial judge very appropriately reasoned that "upon initial circumspection the original act might lead to the conclusion that the Legislature intended that the Council be regarded as an administrative or executive agency," because it was allocated to an executive department and because its members were not only to be appointed by the Governor but also to serve at his pleasure. But he was of the opinion that all this was overcome by the subsequent action by the Legislature in removing the Council from the executive department of Law and Public Safety and by removing the control by the Governor over the length of the term of the Council members. The Attorney-General now urges that the elimination of the allocation in the executive department was in no wise indicative of a "change in legislative intent," because by the provisions of *Article* V, *Section* IV, *paragraph* 1 of the Constitution, which provides:

"All executive and administrative offices, departments, and instrumentalities of the State government, including the offices of Secretary of State and Attorney General, and their respective functions, powers and duties, shall be allocated by law among and within not more than twenty principal departments, in such manner as to group the same according to major purposes so far as practicable. Temporary commissions for special purposes may, however, be established by law and such commissions need not be allocated within a principal department",

temporary commissions for special purposes could be established within the executive branch without allocating it to a particular department. But the force of this argument

disappears when attention is paid to *Article* IV, *Section* V, *paragraph* 2 of the Constitution:

"The Legislature may appoint any commission, committee or other body whose main purpose is to aid or assist it in performing its functions. Members of the Legislature may be appointed to serve on any such body."

Its language is direct and categorical as distinguished from the permissive language of *Article* V, *Section* IV, *paragraph* 1, *supra*.

The trial judge was inevitably led to conclude that although the Council's "functions and powers are broad and encompassed association with both the executive and the legislative branches of government," the purpose of its creation was to minimize crime in New Jersey through legislative action. He noted that this purpose could easily have been lost sight of in view of the fact that the immediate activities of the Council involved cooperation with the Attorney-General and law enforcement agencies of the executive branch. He concluded, however, that its ultimate purpose was legislative and by virtue of the constitutional provisions, *Article* IV, *Section* V, *paragraph* 2, *supra,* the Legislature had the right and the power to appoint and control the members of such body.

The Constitution provides that the nomination and appointment of all officers whose election or appointment is not otherwise made by the Constitution or by law shall be made by the Governor, *Article* V, *Section* I, *paragraph* 12. The one pertinent limitation on the ways in which appointments may "otherwise" be provided for is found in the Constitution itself in the provision prohibiting the Legislature from electing or appointing any executive, administrative or judicial officer except the State Auditor, *Article* IV, *Section* V, *paragraph* 5. Consequently, if the members of the Law Enforcement Council are not executive, administrative or judicial officers their appointment may be provided for by the Legislature in the exercise of its law-making powers, unless there is some other limitation in the Con-

stitution, *State v. Murzda,* 116 *N. J. L.* 219 (*E. & A.* 1935); *Atlantic Coast Electric Railway Co. v. Board of Public Utility Com'rs.,* 92 *N. J. L.* 168 (*E. & A.* 1918); *Hudspeth v. Swayze,* 85 *N. J. L.* 592 (*E. & A.* 1913); *Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14 (1953). *Cf. Maxwell v. Goetschius,* 40 *N. J. L.* 383 (*Sup. Ct.* 1878); 1 *Cooley's Constitutional Limitations,* (8 ed.), ch. v, 173–183. There is no such inhibitory provision. Thus, if the function of the Law Enforcement Council is mainly to assist the law-making body, then the Legislature is not without power to provide for, appoint or extend the term of officers already appointed, even though this authority had previously been delegated to the Chief Executive. What the Legislature may provide for, the Legislature may take away. To borrow the words of the United States Supreme Court in *Anderson v. Dunn,* 6 *Wheat.* 204, 225, 5 *L. Ed.* 242, 247 (1821):

"If there is one maxim which necessarily rides over all others, in the practical application of government, it is, that the public functionaries must be left at liberty to exercise the powers which the people have intrusted to them. The interests and dignity of those who created them, require the exertion of the powers indispensable to the attainment of the ends of their creation."

The basic issue to be resolved in this case is, therefore, whether the main purpose of the Law Enforcement Council is executive or administrative in nature or whether its main purpose is to aid the Legislature in the performance of its work.

Our Constitution, *Article* III, has ordained that

"1. The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."

In this case we encounter none of the difficulties which in a variety of instances have necessitated acceptance on historical grounds of what appear at first blush to be deviations from

the meaning of the doctrine of separation of powers when it is considered solely from the analytical point of view, *Massett Building Co. v. Bennett,* 4 *N. J.* 53 (1950) ; *Vanderbilt, The Doctrine of the Separation of Powers and its Present-Day Significance,* ch. II (1953). There can no longer be any question as to the power of the Legislature to conduct an inquiry into matters which will aid it in the performance of its legislative function, even though the subject may be a proper field of inquiry for another branch of government, *Eggers v. Kenny,* 15 *N. J.* 107, 124 (1954). Whatever doubt there may have been as a result of the expressions in this State in *In re Hague,* 105 *N. J. Eq.* 134 (*Ch.* 1929), affirmed 123 *N. J. Eq.* 475, 9 *N. J. Misc.* 89 (*E. & A.* 1930), and *McRell v. Kelly,* 124 *N. J. Eq.* 350 (*E. & A.* 1938), affirming *In re Kelly,* 123 *N. J. Eq.* 489 (*Ch.* 1938), were definitely laid to rest by *Article* IV, *Section* V, *paragraph* 2 of the *Constitution of* 1947, and by this court in the *Eggers v. Kenny* case, *supra;* see also the extensive discussion in the monograph by Judges Sidney Goldmann and C. Thomas Schettino, entitled *"The Legislature-Investigations,"* in II *Constitutional Convention of* 1947, 1949 (1951).

A few of the duties to be exercised by the Council taken separately could possibly lead to the view that the function of the Council was executive or administrative, but the more fundamental approach of a total appraisal of the work of the Law Enforcement Council leads unquestionably to the conclusion that the Council was intended to make everyone aware of any ineffectiveness of our laws in controlling crime. While this function may be of great value and use to the enforcement authorities and the Chief Executive, not only in enforcing the laws as they now exist but also in recommending to the Legislature where improvement is necessary in that branch, that fact does not negative the primarily intended function of the Council to motivate legislative action in an attempt to deter and lessen criminal activity. Its variegated career has been essentially legislative and what has not been, as far as the Legislature is concerned, is surplusage; see *Waterfront Commission Act, L.* 1953, *c.* 202;

*N. J. S. A.* 32:23–1 *et seq.; L.* 1954, *c.* 181, *N. J. S. A.* 2A:170.20 *et seq.; Fourth Report of the New Jersey Law Enforcement Council, "Strengthening Parole Services"* (March 12, 1956). Had the statute creating the Law Enforcement Council always read as it now reads in its amended form, we doubt that this issue would now be raised. The doubts here adjudicated arise from the failure of the Legislature to assert from the outset its powers under *Article* IV, *Section* V, *paragraph* 2 of the Constitution, *supra.*

The Attorney-General relies heavily upon the New York Crime Commission case, *In re DiBrizzi,* 303 *N. Y.* 206, 101 *N. E.* 2d 464 (*Ct. App.* 1951). But that case presents quite a different factual situation. There the issue was not whether the function was in fact legislative or executive, but whether the investigation being carried on by a crime commission created by executive order of the Governor could reasonably be said to be for the purpose of securing information to advise him in his executive function. There is no question that if the purpose of our Law Enforcement Council was primarily to aid the enforcement of our criminal laws, the decision we have now reached would be otherwise. But it is not; *cf. State ex rel. Hodde v. Superior Court,* 40 *Wash.* 2d 502, 244 *P.* 2d 668, 673 (*Sup. Ct.* 1952).

The judgment will accordingly be affirmed.

WACHENFELD, J. (dissenting). The inquiry, of course, is whether the Law Enforcement Council was intended to be an executive agency or a legislative commission.

Some of the duties assigned to the Council by the act creating it might well come within the province of a legislative commission, especially its responsibility to recommend to the Legislature the enactment of legislation in the field of law enforcement. But those duties and obligations do not end there. The Council is required to examine into and appraise the administration, enforcement and operation of all law enforcement agencies in the State, to initiate and conduct investigations of law enforcement agencies, "from time to time [to] conduct State-wide law enforcement conferences

for the purpose of accomplishing greater co-ordination and uniformity of law enforcement procedures and of recommending improvements thereof," and to "consult and advise with the Attorney-General, and from time to time submit to him such recommendations as it may deem advisable, with respect to the conduct of its work and the administration and operation of law enforcement within the State." *N. J. S. A.* 52:17*B*–43.5.

Where, as here, the customary rule of determination becomes a futile endeavor because the agency functions both executively and legislatively, we must search for the legislative intent elsewhere.

The court below and the majority here acknowledge that the intent of the original framers of the Law Enforcement Council legislation was to create an executive or administrative body and not a legislative commission. The act establishing the Council specifically assigned it to the Department of Law and Public Safety and further provided its members were to be appointed by the Governor. These two factors in the legislative scheme clearly evince an intent to make the Council a component of the executive branch of government.

In 1953 when the Legislature removed the Council from the Department of Law and Public Safety and endowed it with the status of a temporary commission, there was no manifestation by this action alone indicative of any purpose to alter the earlier design of the Council. In fact, the opposite inference may rightfully be drawn, for the motive may have been to avoid the constitutional necessity of allocating the Council to one of the principal departments of the State Government in accordance with *Article V, Section IV, paragraph 1,* of the *Constitution of 1947.*

Furthermore, as part of the very same series of amendments to the original Law Enforcement Council legislation, the Legislature retained the Governor's power to appoint the members of the Council, providing only that the members be appointed for a fixed term rather than at the Governor's pleasure. This again clearly is an announced recog-

nition by the Legislature of the Council's status as an executive or administrative agency. If it were otherwise, the Legislature would have exercised its constitutional power to appoint members of its own choice.

The amendment of the Law Enforcement Council Act made by *chapter* 68 of the *Laws* of 1955, whereby the Legislature sought to extend the terms of the incumbent members of the Council, did not in fact purport to disturb or change the prior status of the Council itself. The Legislature, rather, indirectly sought thereby to arrogate unto itself the power to make appointments within the executive branch of government, which it is expressly forbidden to do by *Article* IV, *Section* V, *paragraph* 5, of the Constitution.

For these reasons I would reverse the judgment below.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, JACOBS and BRENNAN—5.

*For reversal*—Justice WACHENFELD—1.